FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jan 17, 2017

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| STEVE WELLEIN, | No.   2:15-CV-00107-SMJ |
| Plaintiff, | |
| v. | **ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| WAL-MART STORES, INC., a Washington Corporation, | |
| Defendant. | |

## I.      INTRODUCTION

Plaintiff Steve Wellein was terminated from his position as an Assistant Manager at Wal-Mart in November 2014. He alleges that his termination was retaliation for his taking leave under the Family and Medical Leave Act (FMLA) and complaints against his supervisor under Wal-Mart's "open-door" policy, and that the decision was motivated by age discrimination. Wal-Mart has moved for summary judgment on each of Wellein's claims. No evidence in the record connects Wal-Mart's decision to terminate Wellein's employment with Wellein's use of FMLA leave or suggests the decision was influenced by Wellein's age. And Wal-Mart has presented evidence demonstrating that it terminated Wellein because he

SUMMARY JUDGMENT ORDER - 1

repeatedly failed to perform equipment safety inspections, not because he made a complaint against his supervisor. Wellein has not presented any evidence demonstrating that Wal-Mart's stated reason for his termination was pretext. Accordingly, no material issues of fact remain concerning Wellein's claims. Wal-Mart's Motion for Summary Judgment is granted.

## II.    BACKGROUND

Wellein worked as an Assistant Manager at a Wal-Mart store in Ephrata, Washington from April 2008 until November 2014. ECF No. 31 at 2. Wellein's supervisor was Store Manager Brian Buckingham. ECF No. 31 at 1–2.

### A.    Wellein's use of FMLA leave

During his time working at the Ephrata Wal-Mart, Wellian requested FMLA leave on five occasions—two weeks in September 2008 when he was assisting his wife after surgery; one week in November 2010 to care for his wife during an illness; 12 days in 2011 following an asthma attack; one month in 2012 for a carpel tunnel operation; and about two months in late 2012 for complications relating to asthma. ECF No. 30 at 4; ECF No. 34 at 38–39. Wal-Mart granted each request. ECF No. 30 at 4; ECF No. 31 at 4; ECF No. 34 at 15. Wellein suffered no adverse employment consequences following his FMLA leave, although he asserts that managers, including Buckingham, made subtle insulting comments suggesting that he was manipulating FMLA leave. ECF No. 34 at 16.

**B.    Allegations against Buckingham and other employees**

Over the period of his employment at Wal-Mart, Wellein has made a number of allegations of verbal and physical abuse and other misconduct against Buckingham, including the following:

- Shortly after Wellein began working at Wal-Mart, Buckingham grabbed him behind the neck and pulled him away. ECF No. 34 at 10, 29. After Wellein told Buckingham "don't put your hands on me," Buckingham asked are you "too old to play." ECF No. 34 at 10, 29.

- Also within the first few months of his employment, when Wellein was touring the store with Buckingham, Buckingham stated, "Steve, don't get distracted by the shiny things, stay on focus. Too old to keep up with us? Too much walking for you?" ECF No. 34 at 11.

- In October 2008, Buckingham allegedly pushed and kicked Wellein in the produce department of the store, ECF No. 31 at 5; ECF No. 34 at 30.

- In 2011, Buckingham allegedly hit Wellein with a rolled up printer readout. ECF No. 34 at 30.

- In 2013, Buckingham publicly questioned Wellein's notice of time off for jury duty. ECF No. 34 at 30–31.

- In July 2013, Buckingham sent Wellein a text message stating "Shut up bitch and do your job." ECF No. 31 at 5, ECF No. 34 at 31. Buckingham

avers that this was part of a series of joking texts between him and Wellein. ECF No. 31 at 5.

- On a number of occasions Buckingham told Wellein to get a hearing aid or made comments about his hearing and age. ECF No. 34 at 13–14, 34–35.

Wellein also complains of age related comments from other mangers when he started in 2008 and when he moved to the night shift in late 2011 or early 2012. ECF No. 34 at 17–18, 29–30.

## C.    Wal-Mart's "Open Door" policy

Wal-Mart has an "Open Door Communications Policy" which is intended to permit employees to bring any concerns to managers and supervisors. ECF No. 38. The policy provides, among other things, that "retaliation for initiating an open door communication or cooperating in a review relating to any open door communication is strictly prohibited." ECF No. 38 at 2.

## D.    Circumstances leading to Wellein's termination in 2014.

One of Wellein's responsibilities when he worked the night shift was to complete Daily Powered Lifting Equipment (PLE) Pre-Operational Checklists. ECF No. 31 at 2; ECF No. 34 at 19–20. On October 11, 2014, Buckingham noticed that Wellein had not completed the PLE checklist for the previous night. ECF No. 31 at 2. Buckingham asked Wellein about this on October 16, 2014. ECF No. 31 at 2. Wellein told Buckingham that he had completed the inspection. ECF

No. 31 at 2. Buckingham asked Wellein to obtain video verification that he had completed the inspection. ECF No. 31 at 2. When Wellein did not do so, Buckingham prepared a written "coaching" based on Wellein's failure to complete the PLE checklist. ECF No. 31 at 3, 10–11. Wellein denies receiving this coaching document. ECF No. 58 at 15–16.

On October 19, 2014, Wellein sent an email to Human Resources Manager Rebecca Housden, complaining of "verbal abuse, aggressive and confrontational behavior from [Buckingham] during the last two morning tours." ECF No. 34 at 25; ECF No. 59 at 11.

On October 27, 2014, Buckingham met with Wellein concerning the missing PLE checklist. ECF No. 31 at 3. Wellein accused Buckingham of retaliating against him for making an "open-door" complaint against Buckingham. ECF No. 31 at 3. Buckingham asserts that he had no knowledge of the open-door complaint at that time. ECF No. 31 at 3. However, a statement prepared by Buckingham concerning these events states that a conversation in which Human Resources Manager Rebecca Housden informed Buckingham of the open-door complaint occurred on October 25, 2014. ECF No. 31 at 4, 14; ECF No. 59 at 7. Buckingham insists that this statement was incorrect, and that Housden did not inform him about the open-door complaint until the day after his meeting with Wellein, October 28, 2014. ECF No. 31 at 4.

On October 29, 2014, Buckingham sent an email to Housden, explaining his concerns about Wellein's failure to complete the PLE checklist on October 11. ECF No. 62 at 2. After she learned that Wellein failed to conduct a PLE inspection on October 11, Housden instructed Asset Protection Manager Anna Hash to review video footage on other dates to check if Wellein was performing the required PLE inspections. ECF No. 30 at 2; ECF No. 46 at 5. In-store video footage demonstrated that Wellein did not complete the PLE checklists on October 11, 19, 26, and November 11, 2014. ECF No. 46 at 5–8. Housden and Buckingham both state that Buckingham was not involved in the investigation into whether Wellein was performing PLE inspections. ECF No. 30 at 2; ECF No. 31 at 4.

Housden and Market Asset Protection Manger Joseph Smith met with Wellein on November 11, 2014 concerning his PLE inspections. ECF NO. 30 at 3; ECF No. 32 at 2. Smith states that he had no knowledge of Wellein's open-door complaint at the time of this meeting. ECF No. 32 at 2. Smith states that during the meeting, Wellein was unwilling to address the evidence that he failed to conduct PLE inspections and instead focused on alleged retaliation. ECF No. 32 at 2. After the meeting, Housden and Smith made the decision to immediately suspend Wellein until a final decision was made concerning his employment. ECF No. 30 at 3; ECF No. 32 at 3; ECF No. 39. Housden states that Walmart's internal

SUMMARY JUDGMENT ORDER - 6

1   policies require termination for falsification of safety checklists. ECF No. 30 at 3.

2   Ronald Wagner, a Regional Human Resources Director for Wal-Mart avers that

3   falsifying a PLE checklist is a very serious offense, and during his eight years at

4   Wal-Mart, each employee who has been discovered to have falsified a PLE

5   checklist has been terminated. ECF No. 63 at 2.

6       Wellein's attorney sent a letter to Wal-Mart concerning his allegations of

7   retaliation on November 14, 2014. ECF No. 34 at 34.

8       Wal-Mart terminated Wellein on November 25, 2014. ECF No. 30 at 4.

9   Housden and Buckingham both state that Buckingham was not involved in the

10  decision to terminate Wellein. ECF No. 30 at 3; ECF No. 31 at 4.

11  **E.    Procedural History**

12      Wellein filed this action in April 2014, alleging (1) violation of the Family

13  and Medical Leave Act (FMLA); (2) age discrimination in violation of RCW

14  49.60; (3) retaliation in violation of RCW 49.60.210; and (4) breach of a promise

15  of specific treatment. ECF No. 9. Wal-Mart filed this motion for summary

16  judgment on October 14, 2016.

17        **III.    SUMMARY JUDGMENT STANDARD**

18      Summary judgment is appropriate if the "movant shows that there is no

19  genuine dispute as to any material fact and the movant is entitled to judgment as a

20  matter of law." Fed. R. Civ. P. 56(a). Once a party has moved for summary

SUMMARY JUDGMENT ORDER - 7

judgment, the opposing party must point to specific facts establishing that there is a genuine dispute for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). If the nonmoving party fails to make such a showing for any of the elements essential to its case for which it bears the burden of proof, the trial court should grant the summary judgment motion. *Id.* at 322. "When the moving party has carried its burden under Rule [56(a)], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (internal citation omitted). When considering a motion for summary judgment, the Court does not weigh the evidence or assess credibility; instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## IV.    DISCUSSION

**A.    FMLA**

The FMLA provides, among other things, that employees are eligible for a total of 12 workweeks of leave during any 12-month period "because of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). An employer may not

1   "interfere with, restrain, or deny the exercise or attempt to exercise, any right

2   provided under [the FMLA]." 29 U.S.C. § 2615(a)(1). An employer also may not

3   discharge or discriminate against any individual for opposing any practice made

4   unlawful under the FMLA. *Id.* at § 2615(a)(2). Courts have interpreted these

5   provisions as creating two theories of recovery for FMLA claims: "the retaliation

6   or discrimination theory, and the entitlement or interference theory." *Smith v. Diffee*

7   *Ford-Lincoln-Mercury, Inc.*, 298 F.3d 955, 960 (10th Cir. 2002); *see also Sanders*

8   *v. City of Newport,* 657 F.3d 772, 777–78 (9th Cir. 2011). Wellein's claim appears

9   to be one of retaliation.[1] ECF No. 1 at 3.

10      "To make a prima facie showing of FMLA retaliation, [an employee] must

11  show (1) involvement in a protected activity under the FMLA; (2) an adverse

12  employment action; and (3) a causal link between the protected activity and the

13  employment action." *Schultz v. Wells Fargo Bank, Nat. Ass'n*, 970 F. Supp. 2d

14  1039, 1059 (D. Or. 2013). If the plaintiff establishes a prima facie case, "the burden

15  shifts to the employer to articulate a legitimate, nondiscriminatory reason for the

16  adverse action." *Kelleher v. Fred Meyer Stores, Inc.*, 302 F.R.D. 596, 598 (E.D.

17  Wash. 2014) (citing *Sanders v. City of Newport*, 657 F.3d 772, 777 n.3 (9th Cir.

18  ─────────────

19      [1] To the extent Wellein intended to make an FMLA interference claim, such
    claim is not supported by the record. Wellein has not presented evidence that
    Wal-Mart interfered with his ability to exercise his FMLA rights. To the contrary,
20  Wal-Mart accommodated each of Wellein's FMLA leave requests, and he suffered
    no apparent negative employment consequences from his taking FMLA leave.

SUMMARY JUDGMENT ORDER - 9

2011)). If the employer meets this burden, the burden shifts again to the plaintiff to show that the employer's stated reason is pretext. *Id.*

It is undisputed that Wellein requested and took FMLA leave (a protected activity) on several occasions and that he was ultimately terminated (an adverse employment action). But Wellein argues that Buckingham's alleged knowledge of Wellein's open-door complaint, and pattern of retaliatory conduct and abusive statements, are sufficient to permit the Court to infer a causal connection between Wellein's taking FMLA leave and his termination. ECF No. 54 at 18–19. But those facts simply do not suggest any connection between Wellein's use of FMLA leave and his termination. Wellein last took FMLA leave more than two years before he was terminated, and his open-door complaint about Buckingham was unrelated to FMLA leave. Accordingly, Wellein fails to make a prima facie showing of FMLA retaliation.

**B.    Age Discrimination**

Under Washington law, it is an unfair practice "because an individual is forty years of age or older, to refuse to hire or employ or license or to bar or to terminate from employment such individual, or to discriminate against such individual in promotion, compensation or in terms, conditions or privileges of employment . . . ." Wash. Rev. Code. § 49.44.090. Wellein has raised incidents where Buckingham made inappropriate comments concerning his age. But there is no evidence in the

record from which the Court could infer that age discrimination played a role in

Wal-Mart's decision to terminate Wellein. Neither is there evidence that Wal-Mart

took any other action against Wellein on account of his age. Accordingly, Wellein's

age discrimination claim fails.

**C.      Retaliation Under the Washington Law Against Discrimination**

The Washington Law against Discrimination provides that:

> It is an unfair practice for any employer, employment agency, labor
> union, or other person to discharge, expel, or otherwise discriminate
> against any person because he or she has opposed any practices
> forbidden by this chapter, or because he or she has filed a charge,
> testified, or assisted in any proceeding under this chapter.

Wash. Rev. Code § 49.60.210.

"To establish a prima facie case for retaliation, a plaintiff must show that

(1) he or she engaged in statutorily protected activity, (2) an adverse employment

action was taken, and (3) there is a causal link between the employee's activity

and the employer's adverse action." *Tyner v. State*, 154 P.3d 920, 928 (Wash.

App. 2007) (citation and quotation omitted). "An actionable adverse employment

action must involve a change in employment conditions that is more than an

'inconvenience or alteration of job responsibilities,' such as reducing an

employee's workload and pay." *Id.* at 929 (citation omitted).

The *McDonnell Douglas* burden shifting analysis applies to WLDA

retaliation claims. *Id.* at 928–929. Accordingly, once the plaintiff makes a prima

facie showing of retaliation, the burden shifts to the employer to present legitimate

reasons for the adverse action, and if the employer meets that burden, the burden

shifts back to the employee to demonstrate a genuine issue of material fact

regarding whether the employer's reasons were pretext. *Id.*

Wal-Mart argues that Wellein's use of the company's open door policy was

not a protected activity because he was not opposing practices barred by the

WLAD. ECF No. 28 at 11–13. The Court need not address whether Wellein's use

of Wal-Mart's open-door policy was protected activity because, assuming that it

was, Wal-Mart has presented a legitimate nondiscriminatory basis for Wellein's

termination—that he failed to complete PLE inspections and falsified documents

to make it appear as though he completed the inspections. And Wellein has not

demonstrated that Wal-Mart's stated reason for terminating his employment was

pretext.

Wellein continues to deny that he failed to complete PLE inspections on the

dates in question, and suggests that the video evidence is incomplete or unreliable.

ECF No. 58 at 25–31. But the question here is not whether Wellein actually failed

to conduct the PLE checks, it is whether Wal-Mart believed he failed to do so and

terminated him for that reason. The evidence in the record demonstrates (1) that

Wal-Mart reasonably concluded, based on its investigation, that Wellein failed to

complete PLE checklists on at least several occasions and (2) that Wal-Mart

considered this to be a serious issue warranting termination. There is no evidence in the record showing that Wal-Mart's decision to terminate Wellein was influenced by Wellein's complaints about Buckingham.

Wellein focuses extensively on whether Buckingham knew about Wellein's open-door complaint when he informed Housden of the PLE equipment issue, *see* ECF No. 57 at 1–4; ECF No. 58 at 2–11, and points out that Buckingham was the one who initiated the investigation of Wellein by notifying Housden of the missing PLE checklist. ECF No. 58 at 17–18. It is obviously true that Buckingham alerted Housden to Wellein's failure to complete a PLE checklist, but Wellein has not pointed to any facts demonstrating that Buckingham directed the investigation after that point. The evidence in the record demonstrates that it was Housden who initiated further investigation to determine if Wellein had failed to conduct the inspections on other occasions, and that it was Housden and Smith who met with Wellein concerning these incidents and made the decisions to suspend and ultimately terminate Wellein. Further, even if Buckingham knew about the complaint and was involved to some extent in the investigation, that would not have invalidated Wal-Mart's decision to terminate Wellein. Wal-Mart reasonably concluded that Wellein failed to perform an important job duty on multiple occasions. Wellein has not presented any evidence to suggest that he would not

have been fired for this conduct if he had not made a complaint against Buckingham.

Ultimately, the only fact that could suggest Wal-Mart terminated Wellein for his open-door complaint is the proximity in time between that complaint and his termination. But, as discussed, Wal-Mart has presented ample evidence that it had a legitimate, non-discriminatory reason to support its action. Further, the very fact that Wellein long had a poor relationship with Buckingham and previously made complaints about Buckingham, without any resulting adverse actions, undermines Wellein's argument that *this time* Wal-Mart must have terminated him in retaliation for his complaint.

**D.    Promise of specific treatment**

To demonstrate a breach of a promise of specific treatment, a plaintiff must prove "(1) that a statement (or statements) in an employee manual or handbook or similar document amounts to a promise of specific treatment in specific situations, (2) that the employee justifiably relied on the promise, and (3) that the promise was breached." *Bulman v. Safeway, Inc.*, 27 P.3d 1172, 1175 (Wash. 2001).

Wal-Mart argues that its anti-retaliation policy did not create a promise of specific treatment, and, even if it did, it was not breached. ECF No. 28 at 19–20. Wellein appears to argue that Wal-Mart's open door policy created an enforceable promise that bars Wal-Mart from terminating an employee who has made a

SUMMARY JUDGMENT ORDER - 14

complaint under that policy without ensuring that that employee's concerns are heard. ECF No. 57 at 10–11.

The Court need not decide whether Wal-Mart's open-door policy created a promise of specific treatment because the evidence in the record demonstrates that Wellein was not terminated for making a complaint under the policy.

## V.      CONCLUSION

For the reasons discussed, Wellein has failed to show that material issues of fact exist regarding any of his claims.

Accordingly, **IT IS HEREBY ORDERED**:

1.      Defendant's Motion for Summary Judgment, **ECF No. 28**, is **GRANTED**.

2.      All claims are **DISMISSED WITH PREJUDICE**.

3.      All hearings and other deadlines are **STRICKEN.**

**IT IS SO ORDERED.**  The Clerk's Office is directed to enter this Order and provide copies to all counsel, enter judgment in accordance with this Order, and close this case.

**DATED** this 17th day of January 2017.

SALVADOR MENDOZA, JR.
United States District Judge

SUMMARY JUDGMENT ORDER - 15